1   PETER M. WILLIAMSON, State Bar No. 97309
    **WILLIAMSON LAW FIRM**
2   20750 Ventura Blvd., Suite 345
    Woodland Hills, CA 91364
3   Tel: (818) 226-5700/ Fax: (818) 226-5704

4   Michael R. White, State Bar No. 91148
    **WHITE & REED, LLP**
5   5757 West Century Blvd., Suite 700
    Los Angeles, CA 90045
6   Email: white@whitereed.com
    Telephone:   (310) 843-9065
7   Facsimile:   (310) 843-9064

8   Attorneys for Plaintiff
    JOE M. LOPEZ

9

10

11              **UNITED STATES DISTRICT COURT**

12          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

13                      CV13-7287 P (AJWx)

14   JOE M. LOPEZ,                    ) CASE NO.:
                                      )
15                                    ) COMPLAINT FOR DAMAGES FOR:
               Plaintiff,            )
16                                    ) 1.  42 U.S.C. § 1983 –
     vs.                              )      EXCESSIVE FORCE
17                                    )
     CITY OF SANTA MARIA, SANTA      ) 2.  42 U.S.C. § 1983 –
18   MARIA POLICE DEPARTMENT,        )      UNCONSTITUTIONAL POLICIES
     SANTA MARIA POLICE CHIEF        )
19   DAN MACAGNI, SANTA MARIA        ) 3.  42 U.S.C. § 1983 –
     POLICE COMMANDER CRAIG          )      SUPERVISOR LIABILITY
20   RITZ, , SANTA MARIA POLICE LT.  )
     RICO FLORES, SANTA MARIA        )
21   POLICE SGT. JESSE SILVA, SANTA  )
     MARIA POLICE SGT. RUSS          ) DEMAND FOR JURY TRIAL
22   MENGEL, SANTA MARIA POLICE      )
     OFFICER SHANE ARMSTRONG and     )
23   DOES 1 through 10, inclusive,   )
                                      )
24             Defendants.           )
                                      )
25                                    )

26                      **JURISDICTION**

27      1.   The jurisdiction of this Court is invoked under 28 U.S.C. §1331 and §1343

28   arising under Title 42, U.S.C. §1983.

## VENUE

2.    Plaintiff's claims herein arise out of an incident involving Santa Maria Police Officers, in the County of Santa Barbara, State of California, and within the Central District of California, the judicial district in which the claim arose, pursuant to 28 U.S.C. §1391(b).

## PARTIES

3.    Plaintiff, JOE M. LOPEZ, is a competent adult who is a citizen of the United States and resident of the County of Santa Barbara, State of California.

4.    Defendant, CITY OF SANTA MARIA, is a municipality operating pursuant to its Charter. It is a local government entity and is not an arm of the State of California for Eleventh Amendment purposes. The CITY OF SANTA MARIA POLICE DEPARTMENT is an agency of Defendant CITY OF SANTA MARIA.

5.    At all times herein mentioned, Defendant DAN MACAGNI was the Chief of Police of the Santa Maria Police Department and was responsible for implementing, maintaining, sanctioning or condoning the policies, practices and customs of the Santa Maria Police Department, including it's Special Weapons and Tactics ("SWAT") unit and of the Defendants sued herein. Plaintiffs sue Defendant DAN MACAGNI in both his official and individual capacity.

6.    At all times herein mentioned, Defendant CRAIG RITZ was the Commander of the SWAT unit and was responsible for implementing, maintaining, sanctioning or condoning the policies, practices or customs of the Santa Maria Police Department, including it's SWAT unit and of the Defendants sued herein. Plaintiffs sue Defendant CRAIG RITZ in both his official and individual capacity.

7.    At all times herein mentioned, Defendants RICO  FLORES, RUSS MENGEL and JESSE SILVA, were Police Officers for the Santa Maria Police Department, and were responsible for implementing, maintaining, sanctioning or condoning the policies, practices and customs of the Santa Maria Police Department, including its SWAT unit and of the Defendants sued herein. Defendants RICO FLORES,

1   RUSS MENGEL and JESSE SILVA are sued in both their official and individual
2   capacities.

3         8.    At all times herein mentioned, Defendant SHANE ARMSTRONG was a
4   Police Officer employed by the Defendant CITY OF SANTA MARIA and assigned to the
5   SWAT unit on December 8, 2011.   Plaintiff sues Defendant SHANE ARMSTRONG
6   in both his official and individual capacity.

7         9.    Plaintiff is informed and believes, and based upon such information and
8   belief, alleges that each of the defendants designated herein as a DOE is an officer,
9   employee, or agent of Defendant CITY OF SANTA MARIA and are legally responsible
10  for the policies, practices, customs and supervision of each and every other defendant, and
11  thereby proximately caused the injuries and other damages as alleged in this complaint.
12  The true names and capacities of DOES 1 through 10, inclusive, and each of them, are not
13  presently known to Plaintiff, who, therefore, sues said defendants by such fictitious
14  names. Plaintiff will amend this Complaint to show their true names and capacities when
15  the same has been ascertained.

16        10.   At all times herein mentioned, Defendants MACAGNI, RITZ, FLORES,
17  SILVA, MENGEL, ARMSTRONG and DOES 1 through 10, and each of them, were duly
18  appointed police officers, ranking officers and employees of the Defendant CITY OF
19  SANTA MARIA and the SANTA MARIA POLICE DEPARTMENT, and were at all
20  times acting under color of law as the employee, agent and representative of each and
21  every other defendant. Defendant CITY OF SANTA MARIA is vicariously liable under
22  California Government Code §815.2(a) for any and all wrongful, illegal and
23  unconstitutional acts hereinafter complained of committed by the individual defendants
24  employed by Defendant CITY OF SANTA MARIA.

25                                             **FACTS**

26  **A.    General Allegations Regarding the Excessive Use of Force on JOE M. LOPEZ**

27        11.   On December 8, 2011, in the early morning hours before 8:00 a.m., ten
28  officers from Santa Maria Police Department SWAT, and Narcotics and Gang units, met

1　to prepare to execute a narcotics-related search warrant at 325 W. Agnes Street in Santa

2　Maria; an associated vehicle – a 2002 black GMC Yukon, and the person of Samyr

3　Marquez Ceballos (" Ceballos"). Santa Maria Police Officers Silva, Ruiz, Parker, Alvara,

4　Huffman, Cohen, Streker, Dix, Armstrong and Plaintiff ("the SWAT Officers") attended

5　a briefing prior to executing the warrant. Officers Ruiz, Parker, Alvara and Cohen had

6　no prior SWAT training and/or experience. Officers Dix and Armstrong had less than one

7　year of SWAT training. Six of the ten officers assigned to the incident at 325 West Agnes

8　Street (Officers Ruiz, Parker, Alvara, Cohen, Dix and Armstrong) had never participated

9　in any SWAT call-outs prior to December 8, 2011. This was the first SWAT call-out for

10　Sgt. Silva as a SWAT team leader.

11　　　　12.　During the briefing, the SWAT officers were told that Ceballos was regularly

12　armed with a handgun and had been arrested for robbery, assault with a deadly weapon,

13　brandishing, possession, and being under the influence. They were additionally briefed

14　that Ceballos had threatened a shoot-out with the police in order to avoid future arrests and

15　had installed surveillance cameras at his residence.

16　　　　13.　Police surveillance on the morning of December 8, 2011, established that

17　Ceballos left his residence at 325 W. Agnes with two unidentified males and two children

18　around 7:45 a.m. Although the initial tactical plan called for the SWAT officers to

19　execute the warrant on Ceballos immediately when he left the house, the presence of

20　children caused the SWAT officers to pause and wait until the children were dropped off.

21　　　　14.　Although the SWAT officers hoped to find an advantageous area to stop the

22　Yukon that Ceballos was driving, it appeared to them that Ceballos became aware that he

23　was under surveillance. When the SWAT officers attempted to box in Ceballos' vehicle,

24　Ceballos drove around their vehicles nearly hitting Officer Dix, and drove back to his

25　residence with the SWAT officers in pursuit. In an attempt to pull to a stop in front of his

26　house at 325 W. Agnes, Ceballos' vehicle appeared to hit a parked car on the street

27　(although there was no damage), at which time Officer Streker deployed a flash bang in

28　order to distract Ceballos and effectuate a non-combative arrest. The remaining SWAT

1  officers then pulled in behind Ceballos' Yukon.

2      15.   At the point when the Yukon appeared to impact the parked car, both
3  passenger doors of the Yukon opened and two (then unidentified) passengers exited the
4  Yukon. Officer Cohen saw an individual in a red shirt exit the passenger side of the
5  Yukon and he was detained without incident by Officer Streker. Officer Alvara gave
6  commands to the other passenger later identified as Salvador Ceballos ("Salvador"),
7  nephew of the suspect, to get on the ground. Initially, Salvador got on the ground but
8  failed to further comply with Officer Alvara's instructions. Officer Huffman came to
9  Officer Alvara's assistance and began wrestling with Salvador in order to place Salvador
10  in handcuffs.

11      16.   Officer Cohen approached the passenger side of Ceballos' vehicle and saw
12  Ceballos still in the driver's seat. Officer Cohen heard and then saw fellow officers,
13  including Officer Parker, near the driver's door, giving commands to Ceballos to "show
14  your hands." Ceballos failed to comply. Officer Cohen then saw Ceballos with his left
15  hand up and his right hand concealed next to the driver seat in the center area of the
16  vehicle. Ceballos continued to refuse to follow commands. Ceballos told the officers,
17  "Fuck you," or words to that effect. Officer Cohen moved towards the right front bumper
18  of the Yukon to avoid a potential crossfire situation. Officer Parker deployed his TASER
19  Electronic Control Device ("ECD") into the suspect.

20      17.   Through the front windshield, Officer Cohen saw Ceballos bring a gun up
21  with his right hand and point it in the direction of the officers outside the driver's side
22  door. Officer Cohen then fired four rounds at the suspect through the Yukon windshield.
23  None of those rounds hit anyone. Almost simultaneously, Officer Silva moved in and
24  grabbed the actively resisting Ceballos to remove him from the car. At this point, Ceballos
25  momentarily dropped his gun which landed in the driver's door pocket. Ceballos quickly
26  retrieved the gun as the SWAT officers were trying to get him out of the car. Officer
27  Cohen heard multiple officers yell "gun, gun, he's got a gun." At this point Officer
28  Armstrong, who had been assisting Officers Alvara and Huffman detain Salvador, saw

1  Ceballos reaching for his gun from his driver's door pocket (the gun had landed there
2  when he momentarily dropped it) and shot two or three rounds at Ceballos, hitting him at
3  least one time.

4      18.    As Officer Silva and Plaintiff worked to remove Ceballos from the car and
5  take him to the ground, Officer Streker saw Ceballos pointing his gun at Officer Dix.
6  Officer Streker moved closer and began firing multiple rounds at the suspect. He hit
7  Ceballos three times and hit Officer Silva in the hand. At the same time, Officer Dix saw
8  the weapon pointed at him and he fired one or two rounds.

9      19.    Simultaneously, Plaintiff, who was at the driver's side door assisting Officer
10 Silva remove the suspect from the Yukon, started to reposition himself as he heard shots
11 being fired by Officer Armstrong at Ceballos.   Plaintiff was shot once in the leg by
12 Officer Armstrong.

13     20.    As a result of this incident, Ceballos was shot six times by the combined
14 rounds of Officer Streker (3 hits, 1 miss), Officer Armstrong (1 or 2 hits, 1 miss), and
15 Officer Dix (1 or 2 hits) and died immediately at the scene. Officer Cohen's shots injured
16 no one but, instead, lodged in the dash, radio, and passenger compartment.   In addition
17 to Plaintiff being shot in the leg by Officer Armstrong, Officer Silva was shot twice, once
18 in each hand, by either Officer Streker, Dix, or Armstrong. A total of twelve rounds were
19 fired.

20 **B.    Allegations Regarding Damages.**

21     21.    By reason of the wrongful and malicious acts of defendants, and each of
22 them, and of the fright caused plaintiff, plaintiff has suffered extreme and severe mental
23 anguish and physical pain and has suffered anatomic injuries including a severe and
24 debilitating gunshot wound to the leg. Plaintiff will amend his Complaint to set forth the
25 true nature and extent of his injuries when the same have been ascertained.

26     22.    By reason of the wrongful acts of the defendants and each of them, plaintiff
27 was required to and did employ physicians and surgeons to examine, treat and care for
28 him, and incurred additional medical expenses for hospital bills and other incidental

medical expenses in an amount which has not yet been ascertained. Plaintiff is informed and believes and thereon alleges that he will incur additional medical expenses, the exact amount of which is unknown at the present time.

23.    By reason of the wrongful acts of the defendants and each of them, and the physical injuries he suffered in this incident, plaintiff has been unable to attend to his work and perform his normal duties as a Santa Maria Police Officer thus incurring loss of wages in an amount which has not yet been ascertained.    Plaintiff is informed and believes and thereon alleges that he will also incur future loss of earning capacity, the exact amount of which is unknown at the present time.

24.    The intentional and reckless acts of defendant SHANE ARMSTRONG in shooting Plaintiff were willful, malicious, oppressive and in conscious disregard of Plaintiff's constitutional rights, thereby justifying the imposition of punitive or exemplary damages against defendant SHANE ARMSTRONG and in favor of plaintiff.

25.    By reason of the aforementioned acts and omissions of defendants and each of them, plaintiff was required to and did retain an attorney to institute and prosecute the within action, and to render legal assistance to plaintiff that he might vindicate the loss and impairment of his aforementioned rights; and by reason thereof, plaintiff requests payment by defendants of a reasonable sum as and for attorneys fees and costs pursuant to **Title 42 *U. S.C.* § 1988**.

## FIRST CAUSE OF ACTION

### Violation of Civil Rights – 42 U.S.C. §1983

### (Against Defendant Shane Armstrong)

26.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 25 of this Complaint and reincorporates said paragraphs as though fully set forth here.

27.    In the turmoil of events heretofore described, Defendant ARMSTRONG mistook Plaintiff for the gun-wielding Ceballos, aimed his rifle at Plaintiff, who was only a few feet in front of him, and using deadly force shot Plaintiff in the leg by advancing

1    and firing without legal justification or excuse and despite the risk of serious injury and
2    death.

3        28.    Defendant ARMSTRONG, acting under color of law, deprived Plaintiff of
4    rights, privileges and immunities secured to them by the Fourth and Fourteenth
5    Amendments of the United States Constitution in subjecting Plaintiff to excessive and
6    unreasonable deadly force causing Plaintiff to suffer serious and debilitating injuries, all
7    without due process of law. Said wrongful, illegal and unconstitutional conduct by
8    Defendant ARMSTRONG is a proximate cause of the injuries suffered by Plaintiff, and
9    of the losses and damages sustained by Plaintiff as hereinafter alleged.

10        29.    As a proximate result of the wrongful, illegal and unconstitutional acts of
11    Defendant ARMSTRONG, Plaintiff is entitled to be compensated for the denial of his
12    constitutional rights under the Fourth and Fourteenth Amendments for the pain and
13    suffering sustained by Plaintiff following the shooting, loss of earnings and earning
14    capacity, and mental and emotional distress.

15        30.    Plaintiff has hired an attorney to proceed with this action under 42 U.S.C.
16    §1983 and has become obligated to pay attorney's fees and costs. By virtue of 42 U.S.C.
17    §1988, Plaintiff is entitled to attorney's fees and costs from Defendants, and each of them.

18        31.    The intentional and reckless acts of Defendant ARMSTRONG in shooting
19    Plaintiff were willful, malicious, oppressive and in conscious disregard of Plaintiff's
20    constitutional rights, thereby justifying the imposition of punitive or exemplary damages
21    against Defendant ARMSTRONG.

22    **SECOND CAUSE OF ACTION**
23    **Violation of Civil Rights – 42 U.S.C. §1983 - Unconstitutional Polices**
24    **(Against City of Santa Maria, City of Santa Maria Police Department,**
25    **Dan Macagni, Craig Ritz, Rico Flores, Russ Mengel, Jesse Silva**
26    **and DOES 1 through 10)**

27        32.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1
28    through 31 of this Complaint and reincorporates said paragraphs as though fully set forth

1  here.

2      33.    Defendant CITY OF SANTA MARIA and Chief DAN MACAGNI
3  possessed the power and authority to adopt policies and prescribe rules, regulations and
4  practices affecting the operation of the City of Santa Maria Police Department and its
5  tactics, methods, practices, customs and usages relating to the administration and
6  supervision of CITY OF SANTA MARIA POLICE DEPARTMENT employees,
7  including, but not limited to, overseeing, training, internal investigations, personnel,
8  supervision, record maintenance, the use and deployment of firearms and other dangerous
9  weapons, tactics for conducting suspect detentions and arrests and the use of deadly force
10  by its rank and file officers, including its SWAT officers.

11      34.    Plaintiff is informed and believes, and based upon such information and
12  belief, alleges that Defendants CRAIG RITZ, RICO FLORES, RUSS MENGEL, JESSE
13  SILVA possessed the power and authority to adopt policies and prescribe rules,
14  regulations and practices affecting the operation of the CITY OF SANTA MARIA
15  POLICE DEPARTMENT and its tactics, methods, practices, customs and usages relating
16  to the administration and supervision of CITY OF SANTA MARIA POLICE
17  DEPARTMENT employees, including, but not limited to, overseeing, training, internal
18  investigations, personnel, supervision, record maintenance, the use and deployment of
19  firearms and other dangerous weapons, tactics for conducting suspect detentions and
20  arrests and the use of 14 deadly force by its rank and file officers, including its SWAT
21  officers.

22      35.    At all times herein mentioned, Defendants CITY OF SANTA MARIA, CITY
23  OF SANTA MARIA POLICE DEPARTMENT, MACAGNI, RITZ, FLORES,
24  MENGEL, SILVA and DOES 1 through 10, and each of them, knowingly and
25  intentionally promulgated, maintained, applied, enforced and with deliberate indifference
26  to the consequences thereof, permitted the continuation of policies, practices, customs and
27  usages in violation of the Fourth and Fourteenth Amendments to the United States
28  Constitution, including, but not limited to, the following:

1     a)  Failing to implement an adequate training program for SWAT officers;

2     b)  Failing to adequately and properly staff a SWAT team by maintaining

3 a SWAT team with less than a full compliment of SWAT officers (10-12 rather than the

4 recommended 18 members) so that it was comprised of a full compliment of officers

5 sufficient to safely perform and accomplish SWAT missions and objectives;

6     c)  Employing partial SWAT team activations in order to avoid paying

7 overtime to additional SWAT officers.

8     d)  Approving and implementing tactical plans for specific SWAT call-

9 outs, including the instant case, that the SWAT officers had never trained for or utilized

10 in actual field operations such as vehicle interdiction;

11     e)  Failing to adequately and properly fund the SWAT team so it could

12 safely perform and accomplish SWAT functions;

13     f)  Failing to adequately and properly equip the SWAT team so it could

14 safely perform and accomplish SWAT missions;

15     g)  Enlisting police officers on short notice to participate in SWAT call-

16 outs, including the instant one, who had no prior SWAT training and/or experience;

17     h)  Failing to develop and implement a SWAT operations manual which

18 would describe in detail the purpose, role and conduct of SWAT officers and SWAT

19 missions;

20     i)  Failing to develop and implement a call-out Matrix which would

21 objectively determine the severity of a particular situation thereby identifying those

22 situations which required a SWAT call-out;

23     j)  Failing to embrace accepted SWAT tactics universally used by the law

24 enforcement community throughout the United States including "surround and call-outs"

25 because of the costs involved in paying additional SWAT officers including overtime;

26     k)  Failing to adequately train SWAT officers in the use of firearms as

27 well as constitutional limitations in the use of deadly force;

28     l)  Failing to adequately train its officers, including its SWAT officers,

1 in identifying a person that presents a threat of deadly force or violence, as opposed to one

2 that does not;

3 m) Failing to adequately train its officers, including its SWAT officers,

4 to identify a fellow SWAT officer during a raid, detention or arrest;

5 n) Failing to adequately train its officers, including its SWAT officers,

6 in apprehending and detaining a criminal suspect in an area occupied by fellow SWAT

7 officers;

8 o) Failing to adequately train its officers, including its SWAT officers,

9 in the proper tactics and methods in apprehending and detaining a criminal suspect;

10 p) Failing to adequately train its officers, including its SWAT officers,

11 in the proper and appropriate use of deadly force in an area occupied by fellow SWAT

12 officers;

13 q) Failing to adequately train its officers, including its SWAT officers,

14 in the planning of a suspect apprehension, including surveillance, information gathering

15 and checking, apprehension and detention;

16 r) Failing to require a through rehearsal drill or walk-through prior to

17 attempting to apprehend and detain a criminal suspect to prevent the shooting of a fellow

18 SWAT officer;

19 s) Failing to adequately train its SWAT officers to properly function as

20 cells or teams when attempting the apprehension and detention of a criminal suspect;

21 t) Failing to provide adequate supervisory control over the actions of its

22 officers, including its SWAT officers, in regard to adequate training, supervision,

23 equipment, planning, oversight, and administration;

24 u) Failing to investigate in good faith, allegations of excessive and

25 unreasonable use of force by its officers, including its SWAT officers;

26 v) Failing to discipline its officers, including its SWAT officers, who use

27 excessive and unreasonable force; and

28 w) Failing to provide necessary resources, equipment, staff and funding

1    to adequately prepare and train SWAT officers in SWAT operations and tactics.

2       36.    Pursuant to said policy, practice, custom and usage, Defendants MACAGNI,

3   RITZ, FLORES, MENGEL, SILVA and DOES 1 through 10, and each of them, violated

4   Plaintiff's Fourth and Fourteenth Amendment rights to the United States Constitution in

5   a manner, including, but not limited to, the following:

6        a)    Shooting Plaintiff in the leg with a firearm at a distance of less than

7   ten feet by advancing and firing, thereby using unreasonable deadly force causing Plaintiff

8   to suffer serious and debilitating injuries.

9        b)    Conducting an unreasonable search, apprehension and detention of a

10   criminal suspect with known dangerous propensities with inadequate surveillance and

11   planning, utilizing police officers who had no SWAT training or experience, failing to

12   adequately conduct a simulated practice drill, rehearsal or walk through, failing to make

13   certain that the SWAT officers understood their assignment, failing to provide

14   communication and identification by and between SWAT officers.

15        c)    Shooting Plaintiff in the leg without being reasonably certain that the

16   intended shooting victim was not a fellow SWAT officer.

17        d)    Failing to provide adequate training, supervision and supervisory

18   control of the SWAT unit and its officers.

19        e)    Assigning Defendant ARMSTRONG to the SWAT team knowing that

20   he lacked adequate training and the experience necessary to participate in SWAT

21   operations.

22        f)    Conducting a SWAT operation in a manner which was likely to result

23   in the use of excessive and deadly force to innocent citizens and fellow officers.

24       37.    Defendant ARMSTRONG was highly likely to inflict the particular injury

25   suffered by Plaintiff by virtue of the aforesaid policies, practices, customs and usages of

26   Defendants CITY OF SANTA MARIA and the SANTA MARIA POLICE

27   DEPARTMENT, including the inadequate staffing and training of its SWAT team, all

28   of which demonstrated Defendants deliberate indifference to the rights of Plaintiff and

1  constituted a proximate cause of the shooting of Plaintiff and the losses and damages
2  suffered by the Plaintiff as alleged herein.

3      38.    The CITY OF SANTA MARIA is liable for the wrongful, illegal and
4  unconstitutional acts and omissions which were ratified and condoned as the policy,
5  practice, custom or procedure of the CITY OF SANTA MARIA and the CITY OF
6  SANTA MARIA POLICE DEPARTMENT. Defendants MACAGNI, RITZ, FLORES,
7  MENGEL, and SILVA and DOES 1 through 10, ratified and condoned the actions of
8  Defendant ARMSTRONG and the SWAT unit, including, but not limited to, the
9  following:

10          a)    Allowing Defendant ARMSTRONG to gather with, and speak to, the
11  other SWAT officers involved in the raid after the shooting of Plaintiff, thereby permitting
12  Defendant ARMSTRONG to unduly influence, poison and contaminate their
13  recollections· of the events of the raid and the wrongful, illegal and unconstitutional
14  shooting of Plaintiff;

15          b)    Failing to conduct an investigation in good faith into the facts and
16  circumstances of the wrongful, illegal and unconstitutional shooting of Plaintiff, including
17  the failure of the CITY OF SANTA MARIA to memorialize the statements that Defendant
18  ARMSTRONG made to the other SWAT officers following the shooting;

19          c)    Failing to implement philosophy, practice, policy, customs and
20  procedural changes following the shooting of Plaintiff;

21          d)    Failing to discipline Defendant ARMSTRONG as a result of the
22  shooting of Plaintiff and allowing him to remain a sworn police officer on behalf of the
23  CITY OF SANTA MARIA; and

24          e)    Unduly influencing the District Attorney of Santa Barbara and her
25  staff to alter its investigative report of the shooting in order to cover-up and diminish the
26  liability of Defendant ARMSTRONG, the CITY OF SANTA MARIA and the
27  Defendants, and each of them.

28  //

# THIRD CAUSE OF ACTION

## Violation of Civil Rights – 42 U.S.C. §1983 – Supervisor Liability

## (Against Defendants Craig Ritz, Rico Flores, Russ Mengel,

## Jesse Silva and DOES 1 through 10)

39.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 38 of this Complaint and reincorporates said paragraphs as though fully set forth here.

40.     At all times herein mentioned, Defendants RITZ, FLORES, MENGEL, SILVA and DOES 1 through 10, and each of them, acted as supervisors in connection with the SWAT raid of December 8, 2011, which resulted in the unlawful, illegal and unconstitutional shooting of Plaintiff.  Defendants, and each of them, actively participated in the supervision of the rank and file officers, including its SWAT officers and supervisors, involved in the planning, instruction, direction, deployment, staffing, and choice of equipment, regarding the raid. Defendants RITZ, FLORES, MENGEL, SILVA and DOES 1 through 10, and each of them, had a duty to properly instruct, supervise, train, plan, direct, staff, oversee and discipline the City of Santa Maria Police Officers that were involved in the subject raid.

41.     Defendants RITZ, FLORES, MENGEL, SILVA and DOES 1 through 10, and each of them, were actively involved in the planning, staffing and conduct of the raid. Defendant SILVA participated in the raid and set in motion a series of acts by his subordinates.  Defendants RITZ, FLORES, MENGEL, SILVA and DOES 1 through 10, and each of them, acted, and failed to act, in a manner that was reckless and amounted to a callous or deliberate indifference to the constitutional rights of Plaintiff. The acts and omissions of Defendants, and each of them, proximately caused the shooting of Plaintiff and the damages complained of herein.

42.     Defendants RITZ, FLORES, MENGEL, SILVA and DOES 1 through 10, and each of them, in their capacity as supervisors with personal involvement in directing subordinates and in setting in motion a series of acts, knew, or should have known, that

1  their subordinates were likely to inflict constitutional injury to Plaintiff or anybody else
2  at the scene. The wrongful acts and omissions by the supervisors, include, but are not
3  limited to, the following:

4          a)    Failing to provide adequate instruction and training regarding the use
5  of deadly and excessive force knowing there would be innocent citizens and fellow SWAT
6  officers at the scene. Defendants, and each of them, failed to provide adequate instruction
7  and training in regard to identifying a real threat, as opposed to a fellow SWAT officer.

8          b)    Failing to adequately plan the raid, requiring a detailed walk-through
9  or rehearsal drill, making sure that the SWAT officers understood their assignments and
10 eliminating confusion between SWAT officers.

11         c)    Failing to provide adequate training in light of the dangerous and lethal
12 weapons and tactics that were selected by Defendants, and each of them, to be employed
13 in the SWAT raid.

14         d)    Failing to provide adequate training so that its SWAT officers would
15 keep track of each other.

16         e)    Failing to provide adequate training and supervision in live-fire drills
17 under circumstances similar to the subject incident.

18         f)    Enlisting Santa Maria police offices to participate in SWAT call-outs,
19 including the instant one, who had no prior SWAT training or experience; and

20         g)    Failing to oversee and control the conduct of Defendant
21 ARMSTRONG who had no SWAT training and/or experience and was not a regular
22 officer assigned to the Santa Maria Police Department's SWAT team.

23     43.    Defendants RITZ, FLORES, MENGEL, SILVA and DOES 1 through 10,
24 and each of them, ratified the wrongful, illegal and unconstitutional acts which
25 proximately caused the shooting of Plaintiff, and, as such, acquiesced, condoned,
26 acknowledged and consented to the unconstitutional acts of their subordinates.

27 / /
28 / /

## **PRAYER**

**WHEREFORE**, Plaintiff seeks judgment as follows:

AS TO ALL CAUSES OF ACTION

1.     General damages in an amount according to proof;

2.     Special damages in an amount according to proof;

3.     Attorney's fees pursuant to 42 U.S.C. §1988;

4.     Costs and expenses of this litigation; and

5.     Such other and further relief as the Court deems just and proper.

AS TO THE FIRST CAUSE OF ACTION

6.     Punitive and exemplary damages against Defendant ARMSTRONG only in an amount sufficient to punish, deter and set an example.

DATED: October 1, 2013

WILLIAMSON LAW FIRM
WHITE & REED


By_____
PETER M. WILLIAMSON
Attorneys for Plaintiff
JOE M. LOPEZ

# **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury pursuant to *Fed. R. Civ. P. 38(b)*.

DATED: October 1, 2013

WILLIAMSON LAW FIRM
WHITE & REED

By_____
PETER M. WILLIAMSON
Attorneys for Plaintiff
JOE M. LOPEZ